IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE AND JANE DOE**, | * | |
| Individually and as parents and next | * | |
| friends of J.D., a minor child, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW-11-03229 |
| | * | |
| **THE BOARD OF EDUCATION** | * | |
| **OF PRINCE GEORGE'S COUNTY,** | * | |
| 14201 School Lane | * | |
| Upper Marlboro, Maryland 20772, | * | |
| | * | |
| and | * | |
| | * | |
| **KATHLEEN SCHWAB**, | * | |
| 9 Research Road Unit C | * | |
| Greenbelt, Maryland 20770, | * | |
| | * | |
| Defendants. | * | |

*************************************************************************

## <u>MEMORANDUM OPINION</u>

Plaintiffs John and Jane Doe ("Plaintiffs" or "Parents") bring this action on behalf of their

son J.D. ("J.D.") against Defendants Kathleen Schwab ("Schwab") and the Board of Education

of Prince George's County ("Board"). Plaintiffs assert a student-student sexual harassment claim

under Title IX, as well as supplemental state law claims for negligence and gross negligence.

Pending before the Court are (1) Defendants' Motion to Dismiss or, in the Alternative, for

Summary Judgment ("Motion to Dismiss") and (2) Plaintiffs' Motion for Entry of Scheduling

Order or, in the Alternative, for Commencement of Discovery ("Motion for Entry of Scheduling

Order"). The Parties have fully briefed the matter and the Court deems no hearing necessary. For

the reasons articulated below, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES AS MOOT** Plaintiffs' Motion for Entry of Scheduling Order.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court takes the following facts from the Complaint and assumes their truth to rule on the instant Motion to Dismiss. This dispute arises from events taking place between October 2008 and June 2010. Plaintiffs' son, J.D., matriculated at Robert Goddard Montessori School ("School") in fall 2008, where he was assigned to Lisa Jellison's ("Jellison") class. In October 2008, J.D. told his Parents that a classmate ("Classmate") was making sexually explicit comments to him. The Parents reported this incident to Jellison and the School's principal at the time, Ms. Johnson ("Johnson").[1] However, the School allegedly took no action.

As time went on, J.D. reported to his Parents that Classmate continued to harass him sexually and expressed a desire to change schools. His Parents allegedly notified Jellison and the vice principal, Kathleen Schwab ("Schwab") of the harassment and were told that the incident was under investigation. Later in the year, Classmate allegedly exposed his genitalia to J.D. and forced J.D. to touch them. J.D. reported this incident to Jellison, who allegedly informed Johnson and Schwab. Allegedly, however, no one called the Parents and the School took no steps to protect J.D. Classmate's conduct continued—sometimes occurring multiple times daily—and J.D. complained several more times to Jellison. Then, the Parents allege that J.D. stopped complaining because of Defendants' inaction with respect to Plaintiffs' prior complaints. When confronted, Schwab allegedly told the Parents that Classmate denied all allegations and refused to do more. The Parents allegedly complained to the Board's Area Supervisor, but to no avail.

---

[1] Ms. Johnson's first name does not appear in any of the documents before this Court. She is now deceased.

The School assigned J.D. and Classmate to the same class for the following year (2009-2010). That fall, the Student started to accost J.D. in the restroom, at one point trying to climb into the stall where J.D. was located, thus forcing J.D. to flee. J.D. told his Parents about this incident, who immediately informed Schwab. That year, J.D.'s father went to the School more than ten times to ask for help, and Schwab allegedly promised to implement a sign-in/sign-out system and to provide an escort for restroom visits. Allegedly, however, the School implemented neither program. Plaintiffs further allege that the School refused to review footage of the hallways and restroom entrance, going so far as to record over the tapes at a later date.

In February 2010, J.D. allegedly began to exhibit anxious behavior, such as soiling his clothing, as well as showing revulsion at the thought of using school restrooms. Allegedly, he would cry and scream when his Parents would try to talk to him, indicating a preference avoid school or, at least, to take his cousin for protection. In June 2010, J.D.'s Parents allegedly found sexually explicit messages from Classmate on J.D.'s cell phone, whereupon J.D. told his Parents that Classmate had forced J.D. to perform sexual acts on Classmate in the school restroom and classroom library. Plaintiffs allege that J.D. has been diagnosed with post-traumatic stress disorder and symptoms of anxiety and depression on account of Classmate's alleged harassment. J.D.'s Parents further aver that he receives treatment for trauma stemming from those events, in addition to suffering from sleep deprivation and nightmares.

On November 10, 2011, the Parents lodged their Complaint against Defendants. Doc. No. 1. Defendants filed the instant Motion to Dismiss on December 15, 2011. Doc. No. 8. Plaintiffs later filed their Motion for Entry of Scheduling Order on May 15, 2012. Doc. No. 12. The outstanding Motions are ripe for the Court's resolution.

## II.      STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

III.     **LEGAL ANALYSIS**

   **A. Title IX**

The Board argues that Defendants' Title IX claim[2] fails for (1) not meeting the relevant statute of limitations and (2) failing to sufficiently plead satisfaction of the required elements of a Title IX claim. For the following reasons, the Court rejects these arguments.

   *1. Statute of Limitations*

"Title IX does not contain an express statute of limitations . . . ." *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 Fed. App'x 294, 296 n.3 (4th Cir. 2007). This omission comes as no surprise. "Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action." *Reed v. United Transp. Union*, 488 U.S. 319, 323–24 (1989). When this occurs, the Supreme Court has "'generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.'" *Id.* (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)).

The Fourth Circuit has held that courts properly decide Title IX claims based on sexual misconduct with reference to the applicable state personal injury statute of limitations. *See Wilmink*, 214 Fed. App'x at 295–96 & n.3. In *Wilmink*, the plaintiff asserted a Title IX claim against the county board of education based on allegations that her former teacher injured her through sexual misconduct when she was a minor. *See id.* at 285. The *Wilmink* court had to decide the applicable statute of limitations. *Id.* at 295–96. The court held that the state personal injury statute of limitations applied to the plaintiff's Title IX claim. *See Wilmink*, 214 Fed. App'x at 295–96 & n.3. In reaching this conclusion, the court observed that "**every circuit** to consider

---

[2] Under Title IX "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

the issue has held that Title IX . . . borrows the relevant state's statute of limitations for personal

injury." *Id.* at 296 n.3 (emphasis added) (internal quotation marks omitted) (citing cases).

Maryland applies a three-year limitations period to personal injury actions. Md. Code

Ann., Cts. & Jud. Proc. § 5-101. Furthermore, Maryland tolls the limitations period for claims

brought by or on behalf of minors until the minor reaches the age of majority. *See* Md. Code

Ann., Cts. & Jud. Proc. § 5-201.

In this case, like in *Wilmink*, Plaintiffs have asserted on behalf of a minor child a Title IX

claim against the Board based on allegations of sexual misconduct. Therefore, given the near-

unanimous body of circuit authority supporting the propriety of this disposition, the Court

applies Maryland's three-year personal injury statute of limitations to Plaintiffs' Title IX claim.

In the case at bar, the underlying events allegedly started in October 2008 and concluded

in June/July 2010. Plaintiffs filed their Complaint on November 10, 2011. Three years from

October 2008 is October 2011. Therefore, all but the allegations from October 2008 are timely

under Maryland's three-year personal injury statute of limitations. Furthermore, the allegations

from October 2008 are timely because J.D. is a minor and, consequently, § 5-201 tolls the

limitations period on his claim. Accordingly, Plaintiffs' Title IX claim is timely.

Defendants argue that another Fourth Circuit case dictates a different outcome. *See*

*Moore v. Greenwood Sch. Dist. No. 52*, 195 Fed. App'x 140 (4th Cir. 2006). In *Greenwood*, the

plaintiff asserted a Title IX retaliation claim against a school district based on allegations that it

relieved him of his coaching duties in reprisal for filing a complaint with the Office of Civil

Rights ("OCR") of the U.S. Department of Education. *See id.* at 141–42. The plaintiff, a

basketball coach and math teacher, took this measure in response to allegations that he had

discriminated against female athletes. *See id.* at 142. The plaintiff argued that South Carolina's

two-year personal injury statute of limitations should apply to his Title IX retaliation claim. *Id.* at 143. The *Greenwood* court rejected this argument, holding that South Carolina's State Human Affairs Law's ("SCHAL") one-year statute of limitations applied to his claim. *Id.* SCHAL generally prescribes employment discrimination. *See id.* (citing S.C. Code Ann. § 1-13-80(A)(1) (2005)). The *Greenwood* court held that SCHAL was more analogous to the plaintiff's Title IX retaliation claim than South Carolina's personal injury statute of limitations. *Id.* In so holding, the court relied exclusively on opinions from (1) the District of South Carolina and (2) the South Carolina Supreme Court. *See id.*

Although *Greenwood* is mildly persuasive authority to the contrary, the Court eschews following its holding. The facts in this case are decidedly more similar to *Wilmink* than *Greenwood*. Whereas this case involves a minor's Title IX claim based on allegations of sexual improprieties, *Greenwood* involves an adult teacher's retaliation claim traceable to his own his own alleged discriminatory conduct.  Furthermore, whereas the *Wilmink* court grounded its holding in a long line of federal circuit authority, the *Greenwood* court based its decision on an isolated federal district court case and an opinion from the South Carolina Supreme Court. Needless to say, the Court finds this consensus of federal circuit authority more persuasive than these two isolated South Carolina cases. Moreover, the *Greenwood* court completely failed to explain wherein these two South Carolina cases dictated the application of SCHAL to the teacher's retaliation claim. In contrast, the *Wilmink* court specifically noted that "**every circuit** to consider the issue has held that Title IX . . . borrows the relevant state's statute of limitations for personal injury." *Wilmink*, 214 Fed. App'x at 296 n.3 (emphasis added) (internal quotation marks omitted) (citing cases). Therefore, the possibility that Maryland Human Relations Act ("HRA") and its two-year statute of limitations for discrimination claims may be analogous to SCHAL is

immaterial. *See* Md. Code Ann., State Gov't §§ 20-1013(a)(3),  20-1202(c)(1). Considering the

factual similarities between this case in *Wilmink*, the latter's holding that courts properly decide

Title IX claims based on sexual misconduct with reference to the applicable state personal injury

statute of limitations controls.

>    *2. Failure to State a Claim*

"To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show

that (1) she was a student at an educational institution receiving federal funds, (2) she was

subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive

to create a hostile (or abusive) environment in an educational program or activity, and (4) there is

a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th

Cir. 2007) (citation omitted); *see also Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,

526 U.S. 629, 650 (1999). Defendants do not dispute the satisfaction of the first element.

>    a. Based on Sex

Plaintiffs have adequately alleged that Classmate's conduct was based on J.D.'s sex.

Where, as here, the harasser is the same sex as the victim, demonstrating that the harassment was

based on sexual desire suffices to show that the harassment was based on the victim's sex.

*Compare Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that

harassing conduct motivated by sexual desire may support a same-sex sexual harassment claim),

*with Jennings*, 482 F.3d at 695 (noting that courts often look to Title VII to inform their analysis

of Title IX claims).

In this case, the allegations support the inference that Classmate's challenged conduct

sprang from sexual desire. Plaintiffs allege that Classmate repeatedly made sexually explicit

remarks to J.D. Plaintiffs further allege that Classmate exposed his genitalia to J.D. and forced

J.D. to touch them. Additionally, Plaintiffs allege that Classmate forced J.D. to perform sex acts

on him. Accordingly, Plaintiffs have adequately alleged that the harassing conduct was based on

sex.

### b. Severe or Pervasive

"Whether gender-oriented conduct rises to the level of actionable 'harassment' . . .

'depends on a constellation of surrounding circumstances, expectations, and relationships' . . . ."

*Davis*, 526 U.S. at 651 (quoting *Oncale*, 523 U.S. at 82). This constellation of surrounding

circumstances includes, but is not limited to, (1) the severity of the harassment; (2) its frequency;

whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes

with the child's school performance. *Cf. Westmoreland v. Prince George's County, Md.*, Civil

Action No. 09–CV–2453, 2012 WL 2446154, at *18–19 (D. Md. June 26, 2012) (citing *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In this case, the Complaint sufficiently states that Classmate's conduct was both severe

and pervasive. As for severity, as just noted, Plaintiffs allege that Classmate exposed his

genitalia to J.D. and forced him touch them, in addition to forcing J.D. to perform other sex acts.

As for frequency, Plaintiffs allege that Classmate's conduct persisted from October 2008 and

June 2010. Further, Plaintiffs have alleged several instances of intimidating or physically

threatening conduct. Beyond allegations of lewd remarks and forced sex acts, Plaintiffs allege

that Classmate attempted to enter a restroom stall that J.D. occupied. Plaintiffs' allegations also

support the inference that Classmate's conduct unreasonably interfered with J.D.'s school

performance. Even though Plaintiffs do not describe precisely how the conduct adversely

affected J.D.'s school performance, they nonetheless allege that it compelled them to remove

J.D. from the School.

Defendants counter that "peer harassment is less likely to satisfy the elements required for a violation of Title IX." Doc. No. 8-1 at 6. To an extent, Defendants' observation is true. As the Supreme Court has stated, "Courts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Davis*, 526 U.S. at 651–52 (citation omitted). The alleged facts, however, hardly support the inference that the harassment was just another mundane example of the "dizzying array of immature behaviors by students." *See Davis*, 526 U.S. at 651. Rather, construed favorably, the allegations suggest that the harassment was so severe, pervasive, and objectively offensive as to undermine and detract from J.D.'s educational experience, thereby effectively denying him equal access to the School's resources and opportunities. *See id.* (citation omitted). Thus, the alleged harassment is severe or pervasive for the purposes of Title IX's sexual harassment prohibition.

c. Institutional Liability

Defendants argue that no basis exists for imputing liability to them because the allegations fail to justify the conclusion that they either had actual notice of the alleged harassment or were deliberately indifferent to it. The Court disagrees.

Plaintiffs do not allege that, at least as a direct matter, the Board had actual notice of the alleged harassment. Thus, the Court must consider (1) whether Schwab and/or Johnson had actual notice of the alleged harassment and, if so, (2) whether a basis exists for imputing their notice to the school. In the interest of clarity, the Court commences the analysis with question (2).

In *Davis*, the Supreme Court strongly suggested that it is proper to impute actual notice of student-student harassment to the school board where a school principal has such notice. *Cf.*

*Davis*, 526 U.S. at 653. There, the Supreme Court held that the Eleventh Circuit erred in

upholding the district court's decision to dismiss plaintiff's Title IX, peer-peer sexual harassment

claim. *Id.* In so holding, the *Davis* court noted that the plaintiff alleged that multiple victims of

the student's harassment sought an audience with the school principal, thereby indicating that the

principal had actual notice of the harassment. *See id.* In reversing the Eleventh Circuit, the

Supreme Court did not appear to rely on any other allegations that might have constituted direct

notice to the school board. *See id.* at 653–54. Thus, the plain import of *Davis* is that school

boards may incur Title IX student-student sexual harassment liability where the principal has

actual notice of the same. *Cf. id.* This deduction dovetails with *Davis*'s edict that "recipients of

federal funding may be liable for subjecting their students to discrimination where the recipient

is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser

is under the school's disciplinary authority." *See id.* at 646–47 (emphasis added) (brackets and

internal quotation marks omitted).

Although the Fourth Circuit has yet to address the question, other circuits have followed

*Davis*'s import and held that it is proper to impute actual notice of student-student harassment to

the school board where a school principal has such notice. *See Vance v. Spencer Cnty. Pub. Sch.

Dist.*, 231 F.3d 253, 259 (2000); *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238,

1247–48 (10th Cir. 1999). Granted, the Fourth Circuit has held that imputing actual notice to the

school board is not always appropriate in cases of *teacher-student* harassment. *See Baynard v.

Malone*, 268 F.3d 228, 238–39 (4th Cir. 2001). By its literal terms, however, *Baynard* does not

apply to instances of *student-student* harassment. Moreover, the *Baynard* court grounded its

decision on the narrow, fact-specific determination that the principal lacked authority under

Virginia state law to fire the offending teacher. *See id.* Here, dissimilarly, Defendants have yet to

make a showing that Schwab and/or Johnson lacked authority under Maryland law to remove Classmate from J.D.'s class and/or the School. Construed favorably, Plaintiffs' allegations that Schwab promised to take measures to remediate the harassment support the contrary inference.

*Baynard* is also inapposite because of its posture. There, the issue was whether the district court erred in granting the school board's motion for judgment as a matter of law. *See id.* at 234. The district court took this action after the jury had returned a verdict against the school board. *See id.* Here, discovery has yet to commence, let alone a trial terminate, and the Court considers merely whether Plaintiffs have stated a cognizable Title IX sexual harassment claim. Hence, *Baynard* is inapposite, and actual notice to Schwab and/or Johnson may constitute actual notice to the Board.

Still, the Court must address whether the Complaint sufficiently states that Schwab and/or Johnson had actual notice of the alleged sexual harassment. The Court answers this question affirmatively. Plaintiffs allege that J.D. and/or his Parents notified school authorities— often including Johnson and Schwab—about the alleged harassment on numerous occasions. For instance, the Complaint specifically alleges that J.D.'s Parents immediately informed Johnson that Classmate was making sexually explicit comments to J.D. Likewise, Plaintiffs allege that they immediately notified Schwab that Classmate had tried to climb into J.D.'s restroom stall. Furthermore, although the Parents and J.D. did not lodge all of their complaints with Johnson and Schwab, one can plausibly infer that, owing to their frequency and severity, the school officials who fielded them communicated them to Johnson and/or Schwab. Therefore, Plaintiffs have stated a cognizable claim that both Johnson and Schwab had actual notice of the alleged harassment and, hence, there may be a basis for imputing this notice to the Board.

Defendants also argue that Plaintiffs have failed to state a cognizable Title IX sexual harassment claim due to the Parents' alleged failure to follow Administrative Procedure 4170 ("AP 4170"). Defendants note that courts have consistently held that caselaw regarding Title VII sexual harassment claims informs Title IX sexual harassment claims. Defendants also note that the Supreme Court has held that, in Title VII cases, employers may assert an affirmative defense where they are otherwise subject to vicarious liability for hostile work environments that supervisors with immediate (or successively higher) authority over employees create. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998). Defendants observe further that "[t]he defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* Defendants continue that, under *Faragher*, the employer's promulgation of an antiharassment policy with a complaint procedure usually satisfies the first element, and that an employee's failure to use the employer's complaint procedure ordinarily establishes the second element. *See id.* Based on these observations, Defendants conclude that Plaintiffs' alleged failure to follow AP 4170 vitiates their claim as a matter of law.

The *Ellerth/Faragher* affirmative defense does not dictate dismissal of Plaintiffs' Complaint. Notably, the Supreme Court indicated in both *Ellerth* and *Faragher* that an employee's failure to avail himself of an official grievance process does not invariably vitiate his claim. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. In this case, the factual circumstances surrounding the Board's promulgation of AP 4170, and the Parents' alleged failure to take advantage of it, are formless. Once discovery has filled in the facts more, it is

plausible that the Parents will show a reasoned basis for their alleged failure to comply with AP 4170's procedures. Besides, as Defendants assert, it is not yet entirely clear that Defendants failed to take advantage of AP 4170's procedures. Beyond that, it bears emphasis that Defendants have identified no authority specifically proposing that it is proper to apply the *Ellerth/Faragher* affirmative defense in Title IX sexual harassment cases. Thus, Plaintiffs have stated a cognizable claim for institutional liability.

For the foregoing reasons, Plaintiffs have stated a cognizable Title IX student-student sexual harassment claim. Therefore, the Court denies Defendants' Motion to Dismiss as to Plaintiffs' Title IX claim.

## B. Negligence

Under Maryland law, the elements of negligence are well-settled. To state a claim for negligence, a plaintiff must allege facts showing "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *See, e.g.*, *Jacques v. First Nat'l Bank*, 515 A.2d 756, 758 (Md. 1986). Defendants challenge Plaintiffs' negligence claim on two grounds. First, they contend that Schwab enjoys immunity from liability due to her position as a county board employee. Second, they assert that the Board had no duty to J.D. based on the notion that government entities cannot incur liability for injuries that third parties perpetrate. For the reasons below, the Court rejects both of these contentions.

### 1. *Immunity*

The Court declines to dismiss Defendants' negligence claim against Schwab on immunity grounds. Defendants argue that a Maryland statute immunizes Schwab from liability for acts of negligence taken within the scope of employment. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-

518(e). Defendants' argument reflects a misreading of § 5-518(e). Pertinently, § 5-518(e)

provides that "[a] county board employee acting within the scope of employment . . . is not

**personally liable for damages** resulting from a tortious act or omission . . . ." *Id.* (emphasis

added). Properly understood, § 5-518 does not prevent a school board employee from being

adjudicated liable for negligence. *See id.* Rather, it merely requires the county to satisfy any

judgment entered against the employee. *See id.* § 5-518(h) (clarifying that "a judgment in tort for

damages against a county board employee . . . shall be levied against the county board").

Accordingly, Defendants' immunity argument lacks merit.

  *2. The Board's Duty to J.D.*

  Defendants argue that the board owed no duty to protect J.D. from Classmate's conduct.

To support this argument, Defendants rely heavily on the Supreme Court's decision in *DeShaney*

*v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). Defendants' reliance on

*DeShaney* is a red herring. The fundamental holding of *DeShaney* is that, as a general matter, "a

State's failure to protect an individual against private violence . . . does not constitute a violation

of the Due Process Clause." *Id.* at 197. In coming to this conclusion, however, the *DeShaney*

court strongly suggested that the standard for proving a negligence claim under state tort law is

lower than the standard for proving that the state's failure to protect someone from private

violence violates the Due Process Clause. *See id.* at 201–02 (collecting authority). Consequently,

Defendants grossly misplace their reliance on *DeShaney*.

  Plaintiffs have stated a facially plausible negligence claim against the Board. Although

there is generally no duty to protect others from third parties' conduct, such a duty may arise in

the presence of a special relationship. *See, e.g.*, *Rhaney v. Univ. of Md. E. Shore*, 880 A.2d 357,

364 (Md. 2005) (citations omitted). In certain circumstances, a special relationship exists

between a school district and its students. *Cf. Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 993 (4th Cir. 1990) (noting that "schools and the students enjoy a special relationship of trust"). This rules owes in no small part to the fact that, as a general matter, school districts assume significant responsibility for the "welfare and guidance" of children within their purview. *Cf. Resetar v. State Bd. of Ed.*, 399 A.2d 225, 242 (Md. 1979). Here, Plaintiffs allege that they repeatedly notified school officials—including Johnson and Schwab—of the ongoing harassment, and that their complaints fell on deaf ears. Considering the frequency of the complaints, the egregiousness of the alleged sexual improprieties, and Johnson and Schwab's elevated statuses, it is plausible that the Board owed J.D. a duty to protect him from Classmate's conduct.

Furthermore, § 5-518 precludes the Court from dismissing the Board at this stage of the case. In pertinent part, § 5-518 mandates that "the county board **shall** be joined as a party to an action against a county board employee . . . that alleges damages resulting from a tortious act . . . ." Md. Code. Ann., Cts. & Jud. Proc. § 5-518(e). Other than the misguided idea that Schwab enjoys immunity from suit, Defendants do not argue that Plaintiffs have failed to state a facially plausible negligence claim vis- à-vis Schwab. In short, Defendants have adduced no reasons sufficient to overcome § 5-518's mandatory joinder provision. Accordingly, Plaintiffs have stated a cognizable negligence claim as against the Board.

## C. Gross Negligence

This Court has previously had occasion to state the standard for gross negligence under Maryland law. "Gross negligence connotes 'wanton and reckless disregard for others.'" *Markevicz v. Garcia*, Civil Action No. 8:08–cv–02877–AW, 2011 WL 6888641, at *2 (D. Md. Dec. 29, 2011) (quoting *Boyer v. State*, 594 A.2d 121, 132 (Md. 1991)). "A defendant acts with

wanton and reckless disregard for others 'only when he inflicts injury intentionally **or** is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Id.* (emphasis added) (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).

In this case, Plaintiffs state a facially plausible claim that Defendants' actions displayed utter indifference to J.D.'s rights as the rights were nonexistent. Taken as true and construed favorably, Plaintiffs allegations support, inter alia, the following inferences: (1) Classmate engaged in frequent and severe sexual harassment of J.D.; (2) the harassment occurred over a lengthy period of time; (3) Defendants repeatedly notified school officials, including Johnson and Schwab, of this harassment; (4) the notified officials failed to take action to mitigate and/or eliminate the alleged harassment; and (5) Johnson refused to act in response to Plaintiffs' complaints; (6) Defendants assigned Classmate to J.D.'s class despite constantly being notified of the alleged harassment; (7) Schwab failed, without justification, to follow through on a promise to implement remedial measures for the protection of J.D.; and (8) school officials turned a blind eye to video evidence of the alleged harassment, even going so far as to erase it. For these reasons, Plaintiffs have stated cognizable gross negligence claims against Schwab and the Board.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES AS MOOT** Plaintiffs' Motion for Entry of Scheduling Order. A separate Order follows. Also, the Court will issue a Scheduling Order.

|  |  |
|---|---|
| August 15, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |